JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

DEBBIE JANG
State Bar No. 035157
Asst. Federal Public Defender
Attorney for Defendant
debbie_jang@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

David Christopher Zahn,

Defendant.

No. CR-21-00705-PHX-MTL

**DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

Defendant David Christopher Zahn, by and through undersigned counsel, submits this objection to the Draft Presentence Report, ECF No. 44, as well as a sentencing memorandum. Mr. Zahn submits that the application of U.S.S.G. § 2K2.1(b)(6)(A) is inappropriate. Neither by the preponderance of the evidence, nor by clear and convincing evidence, can it be shown that Mr. Zahn "possessed any firearm or ammunition while leaving or attempting to leave the United States." Further, Mr. Zahn submits the following sentencing memorandum and respectfully requests downward variance and a sentence of probation based on 18 U.S.C. § 3553(a) factors.

**I. U.S.S.G. § 2K2.1(b)(6)(A) does not apply in this case.**

**a. The clear and convincing evidence standard applies for this sentencing enhancement.**

The burden of proof in justifying an adjustment at sentencing falls to the moving party. *See United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005). District courts generally use the preponderance of the evidence standard of proof when finding facts at sentencing, but the higher clear and convincing standard may be used "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *Id.*, (citing *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000)).

The requirement that certain sentencing facts be found by clear and convincing evidence is necessary to ensure that the constitutionally required standard of proof is not evaded by reclassifying an element of a crime as a sentencing factor and thereby depriving a defendant of important criminal procedural protections. *Id.* "[W]here the enhancement represents the overwhelming proportion of the punishment imposed, a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations." *Id.*

Under *United States v. Valensia,* 222 F.3d 1173, the Courts use six factors, none of which is dispositive, to guide the determination for whether a sentencing factor has a disproportionate impact on the sentence, including whether an increase in the number of offense levels is less than or equal to four; and whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence. *Id.*

The sentencing enhancement as reflected in the PSR works to increase Mr. Zahn's offense level four points—from thirteen to seventeen. Mr. Zahn would then be facing a guideline range double that of what he is facing without the enhancement—from a range of twelve to eighteen months to a range of twenty-four to thirty months. The enhancement requires this Court to find facts that are elements of dismissed conduct and/or elements of violations that have not been alleged by the government and are not elements of the offense to which Mr. Zahn entered his guilty plea. *See United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2018). The higher standard of clear and convincing evidence is thus applicable in this case.

**b. Neither by clear and convincing evidence nor by the preponderance of the evidence is it shown that Mr. Zahn possessed firearms while leaving the United States.**

Whether by the preponderance of the evidence, or by clear and convincing evidence, there is no evidence to show that Mr. Zahn possessed firearms while leaving the United States. Mr. Zahn was living in both Arizona and Mexico since 2019 when he began his employment at CSL Plasma in Yuma. At the time, he had personal items in both places and would cross frequently and as needed. He would also cross to make extra money exchanging dollars for pesos during the pandemic, crossing the border multiple times a day. Indeed, the Intelligence Research Specialist in this case determined that Mr. Zahn crossed between Mexico and the United States approximately 300 times between March 2020 and March 2021, and many of those times with some amount of US and Mexican currency. These border crossings significantly predate any purchases of firearms and are not necessarily consistent with the dates of his purchases of firearms. Further, Mr. Zahn continued

to cross the border after being interviewed by ATF agents, postdating any of his firearms purchases. Mr. Zahn asserts that he has never taken any firearms to Mexico or sold to anyone in Mexico—and no firearms have ever been recovered in Mexico. As a former border patrol agent, Mr. Zahn is fully aware of the laws prohibiting this and again reasserts that he did not violate this law.

As to the PSR writer's assertion that Mr. Zahn stating he was arrested for "buying firearms and taking to Mexico," supports for this enhancement, Mr. Zahn first asserts that this statement was never made. Second, Mr. Zahn was already interviewed by ATF special agents in March 2021, in which he was questioned about his firearm purchases and his movements to and from Mexico. He was then arrested in September 2021, six months after the ATF interview, when he allegedly made this statement. This cannot be construed not an admission of any sort. Mr. Zahn was already aware of some investigation related to buying firearms and his border crossings. If he did in fact make this statement, it was a statement based on Mr. Zahn's prior questioning with the ATF agent and common sense—not an admission of any kind. Interpreting this alleged statement as evidence of an offense is inappropriate and is akin to the improper use of a charging document as evidence. *United States v. Lyman*, 592 F.2d 496, 502 (9th Cir. 1978) ("An indictment is not evidence.").

**II. A sentence of probation is appropriate in this case.**

In determining an appropriate sentence, the Court must (1) determine the guideline range, (2) consider applicable departures, and (3) consider 18 U.S.C. § 3553(a) factors as a whole. *Gall v. U.S.*, 552 U.S. 38, 49-50. Courts should impose a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 488 (2011). Courts "must make an individualized

assessment based on the facts presented," *Gall*, 552 U.S. at 39, ensuring that the sentence meet the purposes of the sentencing statute: retribution, deterrence, incapacitation, and rehabilitation, 18 U.S.C. § 3553(a).

The Court should impose a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) *citing Williams v. New York*, 337 U.S. 241, 247 (1949). Accordingly, this Court should consider concerning Mr. Zahn's background, character, and conduct. *See Williams*, 337 U.S. at 247; 18 U.S.C. § 3661. Based on those factors, a downward variance and a sentence of probation will best satisfy the § 3553 purposes of sentencing.

**a. Mr. Zahn is a former border patrol agent who has lived an upstanding life, residing in both Arizona and Mexico.**

Mr. Zahn was born in Missoula, Montana, to two loving parents. He attended school in Montana and graduated with a bachelor's degree in criminal justice from Minot State University. He is a longstanding, tax-paying Arizona resident and has lived here for two decades since 2002. He moved to Arizona to begin new employment as a border patrol agent, where he worked for 12 years until 2014. Specifically, from 2005 to 2014, Mr. Zahn was a member of the search and rescue team (but he was on medical leave for the last three years of his service). From 2015 to 2019, Mr. Zahn worked as a paramedic for Rural Metro Fire Department in Yuma. From 2019 until August 2020, he worked at CSL Plasma Donation Center in Yuma, AZ. From 2011 to 2018, Mr. Zahn also volunteered at Saddles of Joy in Yuma, AZ, building fences, obtaining feed for horses, and other routine maintenance.

From 2004-2011, Mr. Zahn owned and lived in a house at 3752 W. 17th Pl., Yuma, AZ. He sold the house in 2011 due to the recession. He then moved to a

rental house from January 2011 until the fall of 2012 at 11170 E. 24th Pl., in Yuma. He then moved to 342 E. 30th St., Yuma, with Gabriel Armendariz. In April 2016, Mr. Zahn purchased a house at 3429 E Cuadrilla Ln., Yuma, but had to sell it in August 2019 due to his loss of employment. Mr. Zahn again moved to 342 E. 30th St., Yuma with Mr. Armendariz.

While working at CSL Plasma in 2019, Mr. Zahn moved part-time to Mexico and began crossing the border regularly between Mexico and his residence in Arizona at 342 E. 30th St. Often, he would stay in Arizona during the workweek and stay in Mexico on the weekends, especially when he was in a relationship with someone in Mexico. When Mr. Zahn learned of a way to make extra money exchanging dollars for pesos during the pandemic, he was crossing the border multiple times a day. He still maintained some of his belongings and received his mail (including mail and bank statements) at 342 E. 30th St.

**b. Mr. Zahn has never taken firearms out of the state of Arizona but understands his error in using a prior address.**

Mr. Zahn began purchasing guns as a stable investment, assuming they would not lose value, and would sell them to people in Arizona at gun shows, as is commonly done. However, Mr. Zahn recognizes that he erred in completing a Form 4473 with the 3752 W 17th Pl. address. Because the address on Mr. Zahn's driver's license was a PO Box address, he used his voter ID card as address verification, instead of the address he was living part-time at with Mr. Armendariz at 342 E 30th St. Once he received a new voter ID card, he was able to purchase other firearms with the correct address at 342 E 30th St. Mr. Zahn understands that he should have waited to use his new voter ID card with updated address to purchase firearms and expresses remorse for his actions. However, Mr. Zahn was

at no point trying to hide his identity and maintains that none of the firearms he purchased were taken to or sold in Mexico.

**c. Mr. Zahn requests a downward variance based on his lack of criminal history.**

Mr. Zahn requests a variance given that this is his first felony offense. Mr. Zahn has just one prior interaction with the criminal legal system—a misdemeanor with a sentence of probation. Otherwise, Mr. Zahn has no other arrests, no other charges, no other convictions, amounting to zero criminal history points. Significantly, Mr. Zahn's zero criminal history points, indicate the lowest risk of recidivism.

In order "to protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered." USSG, Ch. 4, Pt. A, intro. comment. The Sentencing Commission found that two factors were most closely related to differences in recidivism rates: the defendant's criminal history and the defendant's age at time of release.[1] Specifically, the Sentencing Commission found that recidivism rates are "closely correlated" with the total number of criminal history points, finding offenders with zero or one criminal history point had the lowest rates of recidivism at 33.8%.[2] Further, the Sentencing Commission studied the difference in recidivism rates for offenders within CHC I and found a sizeable difference in recidivism rates for offenders with

---

[1] United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview* (March 2016), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[2] *Id*.

zero criminal history points and one criminal history point.[3] Importantly, it found that "[o]ffenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points."[4]

Defendants like Mr. Zahn with zero criminal history points are less culpable and less likely to reoffend. There is less concern of recidivism and Mr. Zahn should accordingly be granted a reduced punishment. Considering all of these factors and findings of the Sentencing Commission, a sentence of probation is sufficient but not greater than necessary to protect the public and afford adequate deterrence.

**d. Mr. Zahn requests a downward variance based on his significant health problems, which would be exacerbated if needing to serve a term of imprisonment.**

As a border patrol agent, he suffered from a number of work-related injuries, beginning with a herniation in cervical spine in 2007, which has led to at least one back surgery. Specifically, he had back surgery in 2013 on his lower spine because he noticed his right foot was rapidly losing strength. Mr. Zahn also had two blood clots, one in his right leg in 2013, which required an inferior vena cava (IVC) filter in 2014, and one in his left leg in 2015, both of which required emergency blood thinning medication. Since that time, Mr. Zahn has been slowly losing functioning of both feet (likely due to his herniated back issues) – his left foot is at about 50% strength loss and his right foot is at about 95% strength loss. He is unable to stand

---

[3] *See* United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* (March 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

[4] United States Sentencing Commission, *Recidivism and the "First Offender"* (May 2004) at 17, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.

for periods of longer than a couple minutes at a time. In order to maintain his balance and address his drop-foot condition, he has been prescribed an ankle-foot orthosis (AFO) for both feet. He was supposed to have surgery in 2019, which was postponed, and is currently seeing a specialist for his feet and spine. Separately, there is concern about the IVC filter that was inserted into Mr. Zahn, which was not removed after a couple months as typically done and may be the same filter that was subject to FDA recall.[5] Mr. Zahn was also in a motorcycle accident in 2020, which was treated for staph infection was still an open wound at the time of indictment.

All of these health concerns require special care. At this point, Mr. Zahn cannot shower while standing. If not using his AFOs, a cane is necessary, in particular while on uneven surfaces or ascending or descending stairs. AtMr. Zahn is also preparing to undergo surgery to remove the IVC filter, which should have been removed nearly a decade ago and would require a week in the hospital and six weeks in recovery. Following that surgery, he will need to undergo surgery for his cervical spine.

Further, Mr. Zahn is currently a caretaker for his aging mother. His mother recently moved from New York to Yuma because she was in need of someone to live with her after Mr. Zahn's grandfather passed away in late September 2022. She has a traumatic brain injury from an accident about thirty years prior and has been recently experiencing early signs of dementia. While Mr. Zahn's mother is currently capable of taking care of daily activities, Mr. Zahn has taken up the role

---

[5] *See* Class 3 Device Recall Gunther Tulip Vena Cava Filter Sets, U.S. Food & Drug Administration, *available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=171163.

of assisting her for other needs, such as driving and cooking, given her forgetfulness.

**e. Mr. Zahn seeks a downward variance due to his exceptional performance on pretrial release for over a year.**

Mr. Zahn has performed exceptionally while on pretrial release. He has maintained routine contact with his pretrial services officer without incident and has fully complied with all of the obligations, and more. Despite not having an employment condition due to his health, Mr. Zahn has been employed the majority of the time while on supervision. He was working as a tax preparer at Jackson Lewis until April and then became a healthcare technician at Horizon and Wellness. Further, he attended truck driving school and obtained his commercial driver license to open new avenues of employment. He successfully completed 12 sessions of Relapse Prevention and has had no infractions regarding substance abuse. Importantly, Mr. Zahn has had no run-in with law enforcement—not even a speeding ticket. This is clear indication that Mr. Zahn would be a model citizen and fully compliant while under any term of probation.

**f. A sentence of probation would not lead to unwarranted sentencing disparities.**

A downward variance to a sentence of probation would not cause unwarranted sentencing disparities. In this district, it is not uncommon for defendants to receive a probationary sentences for cases involving false statements when purchasing firearms:

- *U.S. v. Faustino-Figueroa*, 21-cr-00935-MTL (three years of probation for purchase of 12 firearms);

- *U.S. v. Rowland*, 21-cr-00295-SMB (four years of probation for purchase of 125 firearms);
- *U.S. v. Randall*, 21-cr-00343-SMB (four years of probation);
- *U.S. v. Berrelleza-Hernandez*, 21-cr-00445-DJH (three years of probation);
- *U.S. v. Rodriguez*, 20-cr-0233-DWL (three years of probation).

A probation sentence would not be out of the ordinary for this type of offense. *See* 18 U.S.C. § 3553(a)(6) (Court must consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct). With a felony offense, Mr. Zahn is aware that any potential employment in law enforcement is virtually impossible. He is also aware that he will never be able to own or possess firearms or ammunition. This loss of his Second Amendment right is critical and a severe punishment, ensuring that Mr. Zahn will not reoffend. He is also aware that he will suffer the "collateral consequences" of being a felon—including potential difficulty finding work and securing housing in the future. Given that Mr. Zahn's history and characteristics, including his many health concerns, and his performance on supervised release, a probation sentence would be a sufficient sanction for his offense.

## III. Conclusion

For the foregoing reasons, Mr. Zahn respectfully submits that U.S.S.G. § 2K2.1(b)(6)(A) does not apply. Mr. Zahn respectfully requests that this Court grant a downward variance and impose a sentence probation.

Respectfully submitted: November 10, 2022.

JON M. SANDS
Federal Public Defender

*s/Debbie Jang*
DEBBIE JANG
Asst. Federal Public Defender